1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

# SOUTHERN DISTRICT OF CALIFORNIA

10

11 | UNITED STATES OF AMERICA,

12 |                                Plaintiff,

    vs.

13 | JOSE CORTEZ-PEREZ,

14 |                             Defendant.

CASE NO. 06 CR 1290 WQH

ORDER

15

16 HAYES, Judge:

17       The matter before the Court is the Motion (Doc. # 41) for an order to the Federal

18 Medical Center, Butner, N.C., to involuntarily medicate for an additional four month period

19 of commitment filed by Plaintiff United States of America.

20 **BACKGROUND**

21       On March 6, 2007, this Court entered an order granting the Plaintiff's Motion for an

22 order to the Federal Medical Center, Butner, N.C., to involuntarily medicate the Defendant.

23 The Court made the following findings:

24      The record in this case establishes by clear and convincing evidence that the
Defendant suffers from schizophrenia; that the Defendant is not currently able

25      to assist properly in his defense; and that the Defendant will not likely attain the
capacity to proceed to trial without  appropriate medication.

26
     The conditions in *Sell* are applied when the court is seeking to determine

27      whether involuntary administration of drugs is necessary to further the particular
governmental interest in rendering the defendant competent to stand trial and not

28      for a different purpose related to "the individual's dangerousness, or purposes
related to the individual's own interests where refusal to take drugs puts his

- 1 -

health gravely at risk." *Sell,* 539 U.S. at 182. The Government concedes that there is no evidence in this case to suggest an order of involuntary medication on the grounds of dangerousness and seeks an order for involuntary medication based only upon conditions set forth by the Supreme Court in *Sell.*

**(1)** *"important governmental interests are at stake"*

"The Government's interest in bringing to trial an individual accused of a serious crime is important. That is so whether the offense is a serious crime against the person or a serious crime against property. In both instances the Government seeks to protect through the application of the criminal law the basic human need for security." *Sell,* 539 U.S. at 180.

The Court must "consider the facts of the individual case in evaluating the Government's interest in prosecution." *Id.* The Government asserts an important governmental interest in prosecuting this Defendant with a serious criminal history accused of the crime of illegal reentry. The Government asserts that a determination has been made that the security of the country in general and this District in particular depends upon the prosecution of individuals like this Defendant who have serious criminal histories and continue to enter the United States illegally.

Defendant asserts that his criminal history is old and that the Government's interest in prosecuting a sick man with fake documents is not significant.

Defendant in this case is charged with being a deported alien found in the United States in violation of 8 U.S.C. § 1326. Because the Defendant has prior convictions, he is facing a 20 year maximum sentence and a guideline range of 100-125 months under the United States Sentencing Guidelines. Defendant does not contest the following convictions: (1) May 13, 2005; Southern District of California; illegal entry 8 U.S.C. § 1325; 30 months sentence; (2) January 14, 1998; California Municipal Court in Stockton; possession of controlled substance (cocaine base) for sale California Code § 11351; 6 years sentence; (3) October 2, 1998; Southern District of California; illegal entry 8 U.S.C. § 1325; 24 months sentence; supervised release revoked additional year in custody; (4) May 25, 1993 California Superior Court San Joaquin County; possession of controlled substance for sale California Code § 11351; 4 years sentence. Defendant does not contest the following dates of prior deportations: July 14, 2005; February 15, 1991; August 14, 1990; and May 23, 1989; and the following dates of removals: July 21, 2005; January 16, 2003; May 2, 1997; and May 23, 1989.

Defendant has a serious criminal history including multiple drug convictions and immigration convictions. Defendant has entered the country illegal on numerous occasions. Taking into consideration the seriousness of the charges in this case and the seriousness of the Defendant's prior record, this Court finds that important interests are at stake for the prosecution. Congress has determined that illegal reentry after deportation subsequent to a felony conviction is a serious offense punishable by a term of imprisonment up to 20 years and the Government has a substantial interest in preventing this Defendant with a serious criminal history from continually illegally reentering the United States.

**2) "involuntary medication will** *significantly further* **those [government] interests";**

The Court must find that "the administration of drugs is substantially likely to render the defendant competent to stand trial. At the same time, it must find that administration of the drugs is substantially unlikely to have side effects that will

interfere significantly with the defendant's ability to assist counsel in conducting a trial defense, thereby rendering the trial unfair." *Sell,* 539 U.S. at 181. The Court has examined the specific course of treatment proposed for this Defendant, the side effects and the medical appropriateness of the medications proposed. *Guerrero,* 426 F.3d at 1140.

The evaluators at the Federal Medical Center evaluated the Defendant in 2004/2005 and again in 2006. The evaluators concluded that Haldol would be an effective treatment and that Defendant has been treated with Haldol in the past with manageable side effects. The evaluators concluded that the Defendant "would be substantially likely to become competent to stand trial . . [and] that the proposed treatment would be substantially unlikely to cause side effects which would interfere with his ability to assist in his defense ." Forensic Evaluation at 6. Dr. Berger testified at the evidentiary hearing that the course of treatment proposed for this Defendant rendered him competent to stand trial in a four month period in 2004/2005. Dr. Berger testified that the side effects experienced by the Defendant consisted of mild stiffness of the muscles which responded to treatment. Dr. Berger testified that past experience is the most accurate predictor and that he believed that the Defendant would respond in a positive way to the same course of treatment. Dr. Gomez stated in his report that Defendant is suffering from Chronic Schizophrenia and becomes psychotic and disorganized when not following-up his medication. Dr. Gomez stated that in his opinion, the Defendant "will continue to be found incompetent without the standard medication treatment for his disorder. In addition, the strength of [Defendant's] mental illness will overwhelm his ability to think rationally or comprehend the consequences of his behavior when he is not medicated." Defendant's Memorandum, Exhibit B at 3.

The Court concludes that there is clear and convincing evidence in the record that the involuntary administration of antipsychotic medication as proposed in the Forensic Report dated December 12, 2006 is substantially likely to render that Defendant competent to stand trial and that the proposed treatment is substantially unlikely to cause side effects that will interfere significantly with the defendant's ability to assist counsel in conducting a trial defense. This case presents a rare circumstance in which the Defendant has been effectively and safely treated and returned to competence with manageable side effects within a reasonable period of time during a prior recent hospitalization. There are no facts which would suggest that this Defendant would not respond positively to the proposed course of treatment significantly furthering the governmental interests of rendering him competent to stand trial in a timely fashion.

**3) "involuntary medication is *necessary* to further those interests"**

"The court must find that any alternative, less intrusive treatments are unlikely to achieve substantially the same results... And the court must consider less intrusive means for administering the drugs, e.g., a court order to the defendant backed by the contempt power, before considering more intrusive methods." *Sell,* 539 U.S. at 181.

All evaluators in this case for the government and for the Defendant agree that it is unlikely that this Defendant could be returned to competency without antipsychotic medication. Dr. Gomez states that in his opinion, the Defendant "will continue to be found incompetent without the standard medication treatment for his disorder. In addition, the strength of [Defendant's] mental illness will overwhelm his ability to think rationally or comprehend the consequences of his behavior when he is not medicated, which is evident from

his history."  Defendant's Memorandum, Exhibit B at 3.

The record establishes that the Defendant has been unwilling or unable to voluntarily follow through with prescribed medication on a regular basis and that treatment on a sporadic basis has not been effective. Dr. Berger testified that methods of treatment other than involuntary medication have been attempted but that the Defendant has been inconsistent in his compliance, and that the Defendant reverts back to his delusional psychotic state when he does not take his medication.  There are no circumstances which would suggest that a court order to the Defendant would be successful or that sporadic treatment would return the Defendant to competency.

**4) "administering the drug is medically appropriate"**

"[T]he Court must conclude that administration of the drugs is *medically appropriate*, *i.e.*, in the patient's best medical interest in light of his medical condition.  The specific kinds of drugs at issue may matter here as elsewhere. Different kinds of antipsychotic drugs may produce different side effects and enjoy different levels of success." *Sell*, 539 U.S. at 181.

Treatment with antipsychotic medication is the accepted and appropriate treatment for an individual with the diagnosis of Schizophrenia.  Forensic Evaluation at 5.  Dr. Gomez states that in his opinion the Defendant "will continue to be found incompetent without the standard medication treatment for his disorder."  Defendant's Memorandum, Exhibit B at 3.  The reports establish by clear and convincing evidence that the administration of the proposed course of treatment is in the Defendant's best interest in light of his medical condition. Defendant suffers from Chronic Schizophrenia which will not likely be controlled without standard medication. The proposed medication is widely available standard treatment for persons suffering from the serious mental illness that the Defendant suffers.  Dr. Gomez states that the Defendant has developed a pattern of becoming psychotic, entering the U.S. illegally, and being incarcerated.  Defendant faces more lengthy periods of incarceration as this pattern continues. Based upon all information provided by the reports in this record, this Court finds that there is clear and convincing evidence that administering the proposed course of treatment is medically appropriate for this Defendant based upon his medical condition.
...

Having considered all of the evidence in this record, this Court finds that the Government has shown by clear and convincing evidence a need for the proposed course of treatment sufficiently important to overcome this Defendant's protected interest in refusing treatment, in light of the efficacy, the side effects, the possible alternatives, and the medical appropriateness of the particular course of treatment proposed for this Defendant.

(Doc. # 27 at 7-11.)

Pursuant to these findings, this Court ordered that the Attorney General is authorized pursuant to 18 U.S.C. § 4241(d)(2) to hospitalize the Defendant for treatment in the Federal Medical Center at Butner, North Carolina until his mental condition is so improved that trial may proceed, or in the alternative, for a reasonable period of time not to exceed five months,

whichever occurs first; that the medical staff at Federal Medical Center at Butner, North Carolina shall provide the Court and all counsel with a written report on Defendant's treatment; and that Counsel shall appear at a status hearing in order to assess the progress of the Defendant's treatment, and the probability that in the forseeable future the Defendant will attain the capacity to assist in his defense.  (Doc. # 27).

On July 23, 2007, the warden at FCC Butner provided a written psychiatric evaluation to the Court and counsel recommending continued treatment and evaluation pursuant to Section 4241(d).  The forensic evaluation provided by the warden detailed the course of treatment received by the Defendant at the institution, and provided the Defendant's current mental status assessment.  The evaluators concluded that the Defendant continues to suffer from a mental disease or defect which renders him incompetent to the extent that he would be unable to understand the nature and consequences of the proceedings against him or assist properly in his own defense; that with reasonable medical certainty the Defendant is restorable to competency; and  that the Defendant has demonstrated considerable improvement in his mental status since being prescribed antipsychotic medication.  The evaluators concluded that there is a substantial probability that the Defendant's competency can be restored with continued treatment with antipsychotic medication and recommend that the Court grant an additional four month period of treatment as described under Section 4241(d).

On August 17, 2007, this Court held a hearing regarding the Defendant's mental status.  Counsel for the Defendant informed the Court that he did not request that the Defendant be transported to the District of San Diego for a hearing at this time because it would interfere with Defendant's treatment.  The Court set a further hearing in order to give defense counsel and government counsel the opportunity to contact the staff at FMC Butner.

On September 7, 2007, the Court held a further hearing at which defense counsel indicated that he has contacted the staff at FMC Butner.  Defense counsel stated that he had no opposition to the motion filed by the government to extend Defendant's treatment for a period of four months.

- 5 -

## APPLICABLE LAW

18 U.S.C. Section 4241(d) provides:

If, after the hearing, the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, the court shall commit the defendant to the custody of the Attorney General. The Attorney General shall hospitalize the defendant for treatment in a suitable facility -

(1) for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the forseeable future he will attain the capacity to permit trial to proceed; and

(2) for an additional reasonable period of time until -

(A) his mental condition is so improved that trial may proceed, if the court finds that there is a substantial probability that within such additional time he will attain the capacity to permit the trial to proceed; or

(B) the pending charges against him are disposed of according to law;

whichever is earlier.

In *Sell v. United States,* 539 U.S. 166, 123 S.Ct. 2174 (2003), the Supreme Court specifically addressed "whether the Constitution permits the Government to administer antipsychotic drugs involuntarily to a mentally ill criminal defendant–in order to render that defendant competent to stand trial for serious, but nonviolent, crimes." *Id*. at 169. Prior to *Sell*, the Supreme Court had recognized a "liberty interest in freedom from unwanted anti-psychotic drugs." *Riggins v. Nevada*, 540 U.S. 127, 137, 112 S.Ct. 1810 (1992); *Washington v. Harper*, 494 U.S. 210, 110 S.Ct. 1028 (1990). The Supreme Court in *Sell* concluded that ". . . the Constitution permits the Government involuntarily to administer antipsychotic drugs to a mentally ill defendant facing serious criminal charges in order to render that defendant competent to stand trial, but only if the treatment is medically appropriate, is substantially unlikely to have side effects that may undermine the fairness of the trial, and, taking account of less intrusive alternatives, is necessary significantly to further important governmental trial-related interests. This standard will permit involuntary administration of drugs solely for trial competence purposes in certain instances. But those instances may be rare." 539 U.S. at 179-

180.  The United States Supreme Court set out the following four conditions that must be satisfied before a court can order involuntary medication to render a defendant competent to stand trial: (1) "the court must find that *important* governmental interests are at stake"; (2) "the court must concludes that involuntary medication will *significantly further* those [government] interests"; 3) "the court must conclude that involuntary medication is *necessary* to further those interests"; and 4) "the court must conclude that administration of the drugs is *medically appropriate* i.e. in the patient's best interest in light of his medical condition." *Id*. at 180-181.

### RULING OF THE COURT

The Court has fully considered all of the information available in this case and has reviewed the forensic evaluation dated July 20, 2007.  The record in this case continues to establish by clear and convincing evidence that the Defendant suffers from schizophrenia; that the Defendant is not currently able to assist properly in his defense; and that the Defendant will not likely attain the capacity to proceed to trial without appropriate medication. The record continues to support the findings that important governmental interests are at stake; that involuntary medicating the Defendant will significantly further those governmental interests; that involuntary medication of the Defendant  is necessary to further those interests; and that administering the medication proposed by the institution is medically appropriate.  The evaluators have reported to the Court that the Defendant has demonstrated considerable improvement in his mental status since being prescribed antipsychotic medication.  The evaluators explain that the Defendant has rational as well as factual understanding of the charges against him but shows poor understanding of more sophisticated aspects of the proceedings against him.  The evaluators believe with reasonable medical certainty that the proposed treatment will restore the Defendant to competency.

Having considered all of the evidence in this record, this Court finds the record in this case shows by clear and convincing evidence that the need to extend the Defendant's proposed course of treatment for an additional four month period is sufficiently important and likely to succeed to overcome this Defendant's protected interest in refusing treatment, in light of the efficacy, the side effects, the possible alternatives, and the medical appropriateness of the

particular course of treatment proposed for this Defendant.

IT IS HEREBY ORDERED that:

1) the Motion (Doc. # 41) for an order to the Federal Medical Center, Butner, N.C., to involuntarily medicate for an additional four month period of commitment filed by Plaintiff United States of America is granted. The Federal Medical Center, Butner, N.C., is authorized to involuntarily medicate Defendant as set forth in the Forsensic Evaluation dated July 20, 2007; and

2) the Attorney General is authorized pursuant to 18 U.S.C. § 4241(d)(2) to hospitalize the Defendant for treatment in the Federal Medical Center at Butner, North Carolina until his mental condition is so improved that trial may proceed, or in the alternative, for a reasonable period of time not to exceed four months from the date of this order, whichever occurs first; and

3) the medical staff at Federal Medical Center at Butner, North Carolina shall provide the Court and all counsel with a written report on Defendant's treatment and progress no later than November 16, 2007; and

4) all Counsel shall appear at a status hearing on December 10, 2007 at 2:00 p.m. before this Court in order to assess the progress of the Defendant's treatment, and the probability that in the forseeable future the Defendant will attain the capacity to assist in his defense; and

5) the period of time from July 20, 2006 until the Defendant is found mentally competent to stand trial is excludable under the provisions of the Speedy Trial Act, 18 U.S.C. § 3161(h)(4).

DATED:  September 10, 2007

_William Q. Hayes_
**WILLIAM Q. HAYES**
United States District Judge

- 8 -

06cr1290WQH